UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| BDM, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO.  C05-1347-MJB |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER[1] |
| FEDERAL EXPRESS CORPORATION, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.  INTRODUCTION AND SUMMARY CONCLUSION

This breach of contract action involving an international shipment of goods was initially filed in King County Superior Court by Plaintiff and removed to this Court by Defendant.  Now before the Court is Defendant's motion for summary judgment dismissing Plaintiff's complaint.  Plaintiff has filed a response in opposition to the motion and Defendant has filed a reply.  Having reviewed the motion, all pleadings and documents in support and in opposition, and the remaining record, the Court GRANTS the summary judgment motion and dismisses all of Plaintiff's claims against Defendant.

---

[1]This matter proceeds before the undersigned Magistrate Judge by consent of the parties.

MEMORANDUM OPINION
AND ORDER - 1

## II.  BACKGROUND FACTS

On August 16, 2004, plaintiff Beads Du Monde, LLC ("BDM") and defendant FedEx[2] entered into a FedEx Pricing Agreement (the "Agreement").  Decl. of Bonnie Bridwell, Dkt. #14 at Ex. F.  The Agreement sets out terms and conditions of their contract of carriage, which includes the terms of the applicable FedEx Service Guide incorporated by reference.  *Id.*  On or around September 30, 2004, BDM contacted FedEx to arrange for pickup and shipment of twenty-one (21) export-grade cartons of gems from Washington to China.  When the FedEx courier arrived, he explained to BDM that freight shipments must be palletized and arranged to come back the next day. BDM used a wood pallet that accompanied an earlier FedEx shipment to BDM.[3]

On October 1, 2004, a FedEx courier picked up the palletized shipment for delivery from Redmond, Washington to Changzhou, China, traveling under FedEx international air waybill number 6888630031481.  Dkt. #14, Ex. B.  All documentation and the air waybill for the shipment was prepared by BDM.  The Commercial Invoice that accompanied the shipment described its contents as "synthetic cat's eye, cut but not set for use in manufacture or jewelry" that was being "return[ed] for repair".  Dkt #14, Ex. G.  This invoice listed the total weight of the shipment as 757 pounds, the total commodity value as $210.00, and the total invoice value as $1648.35.  *Id.*

The shipment arrived in China on or about October 5, 2004, but was unable to clear Customs.  Dkt. # 1 at 19.  From October 6 through December 31, 2004, FedEx

_____

[2]Plaintiff's complaint names as defendants Federal Express Corporation, FedEx Ground Package System, Inc, and FedEx Corporate Services, Inc., and collectively refers to these entities as "FedEx."  This Court uses the collective reference in this memorandum opinion.

[3]FedEx concedes the facts in the latter two sentences of this paragraph for purposes of this motion only.  Dkt. #19 at 2.

MEMORANDUM OPINION
AND ORDER - 2

placed more than 90 telephone calls, mostly to the consignee but also to the shipper, in efforts to have the shipment clear Chinese Customs.  Dkt. # 14, Ex D.  On January 10, 2005, the shipment was destroyed by Chinese Customs.

On July 12, 2005, BDM filed this breach of contract action against FedEx, seeking damages in the amount of $51,000 in lost profits it had expected to make in selling the gemstone beads, or in the alternative the value of the gemstone beads, $24,469.19, plus prejudgment interest.  Dkt. #1 at 10.  BDM also seeks damages of $1,437.35, representing charges paid to FedEx to deliver the shipment.  *Id.*  FedEx filed the current summary judgment motion on January 9, 2006.  Dkt. #13.

### III.  THE PARTIES' POSITIONS

FedEx moves for summary judgment dismissing BDM's complaint on grounds that: 1) FedEx did not breach the contract, and 2) BDM failed to give proper, timely written notice of claim.  In the alternative, FedEx moves for partial summary judgment limiting Plaintiff's recovery to 17 SDR's per kilogram pursuant to Article 22(2)(a) of the Warsaw Convention, 1929, as amended at the Hague, 1995.  BDM responds that the summary judgment motion should be denied because: 1) FedEx breached the contract by insisting that BDM use a wood pallet for the shipment and providing a wood pallet that would not clear Chinese customs; 2) the notice provisions do not apply when the shipment is destroyed; 3) if the notice provisions apply, BDM complied with them; and 4) the Warsaw Convention's limitation of liability cannot be decided on summary judgment since there is a genuine issue of material fact as to whether FedEx engaged in willful misconduct.

### IV.  STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to

MEMORANDUM OPINION
AND ORDER - 3

1   interrogatories, and admissions on file, together with the affidavits, if any, show that

2   there are no genuine issues as to any material fact and that the moving party is entitled to

3   judgment as a matter of law." Fed R. Civ. P. 56(c).  In deciding a summary judgment

4   motion, the court views the evidence in the light most favorable to the non-moving party,

5   and draws all reasonable inferences in that party's favor.  *T. W. Elec. Serv., Inc. v.*

6   *Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).  The moving

7   party has the burden of demonstrating the absence of genuine issues of material fact.

8   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202

9   (1986).  If the movant meets this burden, then summary judgment will be granted unless

10  there is significant probative evidence tending to support the opponent's legal theory.

11  *See First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968).

12          In response to a summary judgment motion, the nonmoving party may not rest

13  upon mere allegations or denials in the pleadings, but must set forth specific facts

14  demonstrating a genuine issue of fact for trial and produce evidence sufficient to

15  establish the existence of the elements essential to his case.  Fed. R. Civ. P. 56(e).  A

16  mere scintilla of evidence is insufficient to create a factual dispute.  *Anderson*, 477 U.S.

17  at 252.

18                                    V.  DISCUSSION

19  A.      Applicability of the Warsaw Convention

20          The Warsaw Convention is an international treaty governing liability that arises

21  from the "international transportation of persons, baggage or goods performed by an

22  aircraft for hire." Convention for the Unification of Certain Rules Relating to

23  International Transportation by Air, October 12, 1929, art. 1, 49 Stat. 3000, T.S. No. 876

24  (1934), *reprinted in* note following 49 U.S.C. § 40105.  When the Warsaw Convention

25

26  MEMORANDUM OPINION
    AND ORDER - 4

1    applies, it is the exclusive remedy for actions against air carriers.  *Onyeanusi v. Pan AM*,

2    952 F.2d 788, 793 (3rd Cir. 1992) (citations omitted).  The Warsaw Convention only

3    applies to shipments between territories of signatories, otherwise known as "High

4    Contracting Parties."  *Mingtai Fire & Marine Ins. Co., v. United Parcel Service*, 177

5    F.3d 1142, 1144 (9th Cir. 1999) (citing Warsaw Convention, art. 1(2)).

6         Here, the January 5, 2004 FedEx Service Guide, which was in effect at the time

7    of the shipment, clearly states that "[w]hen the carriage involves an ultimate destination

8    or stop in a country other than the country of departure, the Warsaw Convention[4] may be

9    applicable."  Dkt. #14, Ex. E at 27.  Moreover, neither party disputes that China and the

10   United States are High Contracting Parties to the Warsaw Convention as amended by the

11   Hague Protocol of 1955.[5]   Thus, the present action falls within the parameters of the

12   Warsaw Convention as amended by the Hague Protocol of 1955 (the "Convention").

13   B.    Breach of Contract Claim

14        FedEx argues that BDM's breach of contract action is barred because although

15   the shipment was not delivered to the consignee, the basis was not due to a FedEx

16   breach.  Rather, FedEx asserts that nondelivery of the shipment was solely due to the

17

18        [4]The FedEx Service Guide provides that "Warsaw Convention" or "Convention" as used
     in the FedEx Express terms and conditions, means the original Warsaw Convention or that
19   convention as amended, including the Montreal Protocol No. 4 and the Montreal Convention."
     Dkt. #14, Ex. E at 27).
20

21        [5]This treaty is formally known as the Protocol to Amend the Convention for the
     Unification of Certain Rules Relating to International Carriage by Air signed at Warsaw on 12
22   October 1929, Sept. 28, 1955, 478 U.N.T.S. 371.  The Hague Protocol to the Warsaw
     Convention entered into force in China on November 18, 1975.  The United States Senate
23   approved the Hague Protocol on July 31, 2003, and it was ratified by President George W. Bush
     effective December 14, 2003.  *See Avero Belg. Ins. v. Am. Airlines, Inc.*, 423 F.3d 73, 83 (2nd
24   Cir. 2005) (holding that the United States did not consent to be bound to the Hague Protocol by
     virtue of its ratification of Montreal Protocol No. 4 in 1998).
25
     MEMORANDUM OPINION
26   AND ORDER - 5

requirements of Chinese customs, and the burden of compliance with customs is strictly on the shipper under the Convention and the contract. BDM responds that FedEx can be held liable to BDM because FedEx insisted that BDM use a wood pallet that would not clear Chinese customs since it was not heat treated. BDM contends that it did not intend for the pallet to be used all the way to China, and that by overruling BDM's chosen form of packaging, FedEx took it upon itself to ensure that its chosen form of packaging complied with Chinese and international law.

These arguments highlight the preliminary issue of why the shipment failed to clear customs that must be addressed in order to determine whether FedEx is entitled to summary judgment dismissing BDM's breach of contract claim. Thus, the Court first considers whether the record reflects a genuine issue of material fact regarding the reason the shipment was held in Chinese customs and eventually destroyed.

The only evidence in the record concerning the reason the shipment was held by Chinese customs appears in the Customer Exception Request, attached as Exhibit "D" to the Declaration of Bonnie Bridwell in support of FedEx's summary judgment motion. Dkt. #14. This exhibit contains entries tracking telephone communications between FedEx and the consignee and/or the shipper after the shipment failed to clear customs. Careful review of this exhibit reveals a number of entries that flesh out the reasons the shipment failed to clear customs. Those entries are charted in the following table:

| DATE | TEXT ENTRY |
|------|-----------|
| 10/5/2004 | Notify: Ship and Cnee of required clearance documentation and info Reason: CPW - Call Shp/Cnee; Nd ppwk/info |
| 10/6/2004 | Shpt has been caged by SZX customs due to need formal entry |

MEMORANDUM OPINION
AND ORDER - 6

| 11/9/2004 | Origin, Pls note Shpr the shpt has been in Shenzhen Customs cage for such a long time and Cnee isn't working in clearing the shpt . . . By the way the value is too low to be accepted by China customs . . . and if the shpt stay in customs cage more longer, it wl be destroyed by customs. |
|---|---|
| 11/15/2004 | Cld Ms. Gao[6] . . ., she has asked the factory to enhance the value |
| 11/15/2004 | Cld Ms. Gao . . ., Ms. Gao tld me there are two way to resolve the problem / / / /one is maybe she wl destroy the shpt; another is she wl enhance the value to clear the shpt, but she has to consult with the boss of the factory. . . .She won't rtn the shpt to shpr |
| 11/17/2004 | Cld Ms. Gao . . ., she tld me she has try her best to descuss the price with the factory . . . when there is a result she wl cb |
| 11/18/2004 | Cld Ms. Gao . . ., she tld me she wl still want Tianyichengcin to handle this case, she wl let them to check the shpt and enhance the value to a relative reasonable price |
| 11/19/2004 | Cld Ms. Gao . . ., asked how about the process// 1.  Tianyichengxin asked their shpr to provide a suffocating testify Ms. Go has sent e-mail to their shpr |
| 11/22/2004 | Origin, Pls help cnee to ctc shpr to provide the above ppwk |
| 11/23/2004 | Origin Pls help ctc shpr that Cn Customs required certificate of heat treatment of wood pallet first, or it could not be clred.  We had informed Cnee Ms. Gao on the above.  She tld me she wl also ctc Shpr when he was on duty for it |
| 11/24/2004 | Cld Ms. Gao . . ., tld her the heat treatment on wood pallet shoul[d] be provided by Shpr, she noted and she wl send e-mail to Shpr and urge them to provide the approval |
| 11/25/2004 | Cld Ms. Gao . . ., she tld me T/Y has contacted her yesterday and she has noted Shpr very clearly in e-mail to provide the heat treatment on wood pallet//Now is just waiting for Shpr to send the information |
| 12/1/2004 | Cld Ms Gao . . ., she tld me that Shpr had mailed certification of heat treatment to her.  Now it was in Shanghai.  After she got it, she wl mailed it to Tianyi Broker Ms Liu to help do formal entry |

---

[6]The consignee Mr. Zheng named as Ms. Gao as the person that he would ask to contact FedEx regarding the shipment after it failed to clear Chinese Customs.  *See* Dkt. 14, Ex. G at 11.

MEMORANDUM OPINION
AND ORDER - 7

| 12/3/2004 | Cld Tianyichengxin Ms Liu Lin, she tld me she didn't receive the heat treatment . . . she tld me the value of this shpt is still relative low according to customs, this shpt's HS code is 70181000 and the D/T cage fee, delay charge, plus them together is nearly 12000RMB . . . Ms. Liu tld me to note Ms. Gao the above |
|---|---|
| 12/14/2004 | Cld Cnee Ms Gao, she asked Tianyi Broker Co to do formal entry |
| 12/17/2004 | Origin Pls be noted if Cnee could not do formal entry before 1/5/2005, the shpt wl be handed to Cn Customs to dispose. That is to say, both Cnee n Shpr wl lose right to handle it. If Cnee want to do formal entry, she must pay 0.5% of D/V due to delaying declaration to Cn Customs n fee of renting warehouse |
| 12/20/2004 | FedEx China, called Shpr & spk w/ Graham and Arcus Kelley . . . per shpr, this is a standard wooden warehouse pallet that was shrink wrapped becasue FedEx (USA) adv them the only way this shpmnt would be accepted was to be shrink wrapped on a pallet & shipped to China . . . Shpr stated you have their full authority to destroy the pallet only and delv pkgs. |
| 12/20/2004 | According to Cn Customs n CIQ's Policy . . .we had no right to destroy the wood pallet n Cnee/Shpr must provide heat treatment certificate and other ppwk to clear it. |
| 12/27/2004 | Ld Ms Gao . . ., she tld me she has ctced Shpr for wanting the heat steam . . . if Shpr can't provide the document, she wl not respons for the result |
| 1/4/2005 | Cld Ms. Gao . . ., noted her the shpt has been in Customs cage for 3 months . . . Now Cn Customs wl handle this case . . . she tld me she wl send e-mail to note Shpr the above |
| 1/7/2005 | Applied to Destroy this Shpt . . . .CN Customs wl handle this case |

Dkt. #14, Ex. G at 11-21.

These entries show that the reason the shipment was held by Chinese customs was the absence of certain documentation and information needed for formal entry of the shipment, including both information enhancing the value of the shipment, as well as a certificate of heat treatment of the wood pallet. It further shows that the shipment was destroyed only after three months had lapsed without resolution of these customs

//

MEMORANDUM OPINION
AND ORDER - 8

clearance issues.  Thus, the  undersigned concludes that there are no genuine issues of material fact regarding the reason the shipment was held by Chinese Customs.

Consequently, in this case, assessment of whether there is a genuine issue of material fact on FedEx's claim that it did not breach the contract turns on the issue of who bore the responsibility for satisfying the customs requirements.  Here, the Court agrees with FedEx that the Convention and the contract place all burden of properly completed paperwork on the shipper.

The relevant provisions of the Convention that address this issue are Articles 10 and 16.  Article 10 provides:

> (1)    The consignor shall be responsible for the correctness of the particulars and statements relating to the goods which he inserts in the air waybill.
>
> (2)    The consignor shall indemnify the carrier against all damage suffered by him, or by any other person to whom the carrier is liable, by reason of the irregularity, incorrectness or incompleteness of the particulars and statements furnished by the consignor.

Additionally, Article 16 states:

> (1)    The consignor must furnish such information and attach to the air waybill such documents as are necessary to meet the formalities of customs, octroi, or police before the goods can be delivered to the consignee.  The consignor shall be liable to the carrier for any damage occasioned by the absence, insufficiency, or irregularity of any such information or documents unless the damage is due to the fault of the carrier or his agents.
>
> (2)    The carrier is under no obligation to enquire into the correctness or sufficiency of such information or documents.

In this case, these Articles of the Convention make it clear that to the extent the paperwork and documentation necessary for the shipment to clear Chinese Customs was insufficient or incomplete, the responsibility for preparation and correctness of those documents lay with the consignor, BDM, not the carrier, FedEx.

MEMORANDUM OPINION
AND ORDER - 9

1    Moreover, several provisions of the applicable FedEx Service Guide also relieve

2    FedEx of responsibility under the circumstances of this case.  First, the "Customs

3    Clearance" section of the Service Guide states in pertinent part:

4         D.    When shipments are held by customs or other agencies due to
          incorrect or missing documentation, we may attempt first to notify the
5         recipient.  If local law requires the correct information or documentation to
          be submitted by a recipient and recipient fails to do so within a reasonable
6         time as we may determine, the shipment may be considered undeliverable.
          . . . If the recipient fails to supply the required information or
7         documentation, and local law allows the sender to provide the same, we
          may attempt to notify the sender.  If sender also fails to supply the required
8         information or documentation, and local law allows the sender to provide
          the same, we may attempt to notify the sender.  If sender also fails to
9         provide the information or documentation within a reasonable time as we
          may determine, the shipment will be considered undeliverable.  *We assume*
10        *no responsibility for our inability to complete a delivery due to incorrect*
          *or missing documentation, whether or not we attempt to notify the*
11        *recipient or sender.*

12   Dkt. 14, Ex. E at 29 (emphasis added).  The record reflects that FedEx repeatedly

13   contacted the recipient and the sender in efforts to obtain clearance of the shipment

14   through Chinese customs.  *See* Dkt. 14, Ex. G.  However, because neither BDM nor its

15   consignee ever resolved the customs issues concerning the missing or incomplete

16   documentation needed for formal entry of the shipment into China, FedEx's inability to

17   complete delivery falls squarely within the scope of this provision.

18        Furthermore, the "Liabilities Not Assumed" section of the applicable FedEx

19   Service Guide  provides:

20        *We will not be liable for*, nor will any adjustment, refund, or credit
          of any kind be given as a result of, any loss, damage, delay, misdelivery,
21        *nondelivery*, misinformation or failure to provide information caused by or
          resulting in whole or in part from:

22        * * *
23        G.    Our inability to complete a delivery, or a dely to any delivery due to
          *acts or omissions of customs* or other regulatory agencies.
24
25   Dkt. 14, Ex. E at 31-32 (emphasis added).  The nondelivery in this case resulted from

26   MEMORANDUM OPINION
     AND ORDER - 10

the acts of Chinese Customs in placing a hold on the shipment and in ultimately destroying the shipment.  Thus, under this provision, FedEx was relieved of any liability to BDM resulting from the loss and nondelivery of this shipment.

In an effort to avoid FedEx's relief from liability under these provisions of the Convention and the contract,  BDM argues that its gems were destroyed because they were placed on a wood pallet that was not heat treated, and BDM seeks to narrow the focus to who is responsible for the wood pallet being untreated.  In that regard, BDM claims that because FedEx required BDM to place its 21 packages on a pallet, FedEx took this case out of its standard contract and took upon itself to ensure that its chosen form of packaging complied with Chinese and international law.

However, the Court finds these arguments to be without merit.  While it is undisputed that the FedEx courier told BDM the shipment needed to be palletized, BDM itself chose the wood pallet on which the  21 boxes were shipped and it packed the boxes onto the pallet.  There are absolutely no facts in the record to suggest that FedEx was involved in selecting the pallet that BDM used for this shipment.  Moreover, the "Packaging and Marking" provisions of the FedEx Service Guide, squarely places the burden on the shipper to "comply with all applicable laws (including, but not limited to, local state, federal and international laws), including those governing *packing*, marking and labeling for all shipments."  *See* Dkt. #14, Ex. E at 22.  Thus, the Court finds that BDM alone bore responsibility for selection of a wood pallet that was untreated.

C.    Remaining Claims

FedEx's summary judgment motion also presents arguments that this suit is barred because BDM failed to file a timely written notice of claim with FedEx, and that FedEx's liability, as a matter of law, is limited to 17 SDRs per kilogram because the

MEMORANDUM OPINION
AND ORDER - 11

shipper failed to declare, or pay for, a value for carriage for the shipment.  In light of the Court's conclusion that FedEx did not breach its contract with BDM, it is unnecessary to address these remaining issues.

## VI.  CONCLUSION AND ORDER

For the reasons stated above, the Court finds that there are no genuine issues of material fact precluding summary judgment on grounds that FedEx did not breach its contract with BDM.  Therefore, the Court GRANTS FedEx's motion for summary judgment (Dkt. #13) and dismisses all of BDM's claims against FedEx with prejudice.

DATED this 31st day of March, 2006.

MONICA J. BENTON
United States Magistrate Judge

MEMORANDUM OPINION
AND ORDER - 12